UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

               Plaintiff,

        v.

NPB ADVERTISING, INC., a corporation,
also d/b/a Pure Green Coffee;
NATIONWIDE VENTURES, LLC, a limited
liability company;
OLYMPUS ADVERTISING, INC., a
corporation;
JMD ADVERTISING, INC., a corporation;
SIGNATURE GROUP, LLC, a limited
liability company;
SERMO GROUP, LLC, a limited liability
company;
NICHOLAS SCOTT CONGLETON,
individually and as an owner and managing
member of NPB Advertising, Inc.,
Nationwide Ventures, LLC, Olympus
Advertising, Inc., JMD Advertising, Inc., and
Signature Group, LLC;
PAUL DANIEL PASCUAL, individually and
as an owner and managing member of NPB
Advertising, Inc., Nationwide Ventures, LLC,
Olympus Advertising, Inc., JMD Advertising,
Inc., and Signature Group, LLC;
and
BRYAN BENJAMIN WALSH, individually
and as an owner, officer, and managing
member of NPB Advertising, Inc., Olympus
Advertising, Inc., and JMD Advertising, Inc.,
and as an owner and managing member of
Nationwide Ventures, LLC, and Signature
Group, LLC,

            Defendants, and

Civ. No. 8:14-cv-01155-SDM-TGW

FIRST AMENDED COMPLAINT FOR
PERMANENT INJUNCTION AND OTHER
EQUITABLE RELIEF

DYLAN CRAIG LOHER, individually, and
CPW FUNDING, LLC, a limited liability company,

Relief Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 53(b), to obtain permanent injunctive relief, rescission or

reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten

monies, and other equitable relief for Defendants' acts or practices in violation of Sections

5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in connection with the sale and

marketing of Pure Green Coffee, a dietary supplement.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C.

§ 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by

statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C.

§ 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The

FTC also enforces Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits false

advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.

-2-

5.  The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. § 53(b).

**DEFENDANTS**

6.  Defendant NPB Advertising, Inc., also doing business as Pure Green Coffee, is a Florida corporation with a place of business in the Middle District of Florida. NPB Advertising, Inc., transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, NPB Advertising, Inc., has advertised, marketed, distributed, or sold Pure Green Coffee, a dietary supplement, to consumers throughout the United States. In that capacity, NPB Advertising, Inc., also has conducted business as Bungo Media, Quest Laboratories, GreenCoffee8884963810, and Nation Wide Ventures.

7.  Defendant Nationwide Ventures, LLC, is a Wyoming limited liability company, with a registered address of 123 West First Street, Suite 675, Casper, Wyoming 82601, and a place of business in the Middle District of Florida. Nationwide Ventures, LLC, transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Nationwide Ventures, LLC, has advertised, marketed, distributed, or sold Pure Green Coffee to consumers throughout the United States. In that capacity, Nationwide Ventures, LLC, also has conducted business as Nation Wide Ventures, LLC, Pure Green Coffee, Bungo Media, and Quest Laboratories.

8.      Defendant Olympus Advertising, Inc., is a Florida corporation with a place of business in the Middle District of Florida. Olympus Advertising, Inc., transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Olympus Advertising, Inc., has advertised, marketed, distributed, or sold Pure Green Coffee to consumers throughout the United States. In that capacity, Olympus Advertising, Inc., has conducted business as egreencoffeeextract, truegreencoffeediet.com, and GRNCOFEXTRCT8887459754.

9.      Defendant JMD Advertising, Inc., is a Florida corporation with a place of business in the Middle District of Florida. At all times material to this Complaint, acting alone or in concert with others, JMD Advertising, Inc., has advertised, marketed, distributed, or sold Pure Green Coffee to consumers throughout the United States. In that capacity, JMD Advertising, Inc., also has conducted business as EGreenCoffe8887397098 and E Green Coffee Diet.

10.     Defendant Signature Group, LLC, is a Wyoming limited liability company with a registered address of 123 West First Street, Suite 675, Casper, Wyoming 82601, which address is identical to that of Nationwide Ventures, LLC, and with a place of business in the Middle District of Florida. Signature Group, LLC, transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Signature Group, LLC, has advertised, marketed, distributed, or sold Pure Green Coffee to consumers throughout the United States.

11.     Defendant Sermo Group, LLC is a Florida limited liability company with a place of business in the Middle District of Florida, of which Dylan Loher is the sole member.

-4-

Starting in early 2013, acting alone or in concert with others, Sermo Group, LLC, has advertised, marketed, distributed, or sold Pure Green Coffee to consumers throughout the United States.

12.     Defendant Nicholas Scott Congleton ("Congleton") has a substantial ownership interest in and has played a leading management role in NPB Advertising, Inc.; Nationwide Ventures, LLC; Olympus Advertising, Inc.; JMD Advertising, Inc.; and Signature Group, LLC; and has played a leading management role in Sermo Group, LLC.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of NPB Advertising, Inc.; Nationwide Ventures, LLC; Olympus Advertising, Inc.; JMD Advertising, Inc.; Signature Group, LLC, and Sermo Group, LLC, including the acts and practices set forth in this Complaint.  In connection with these activities, Defendant Congleton has used the aliases Mike Jackson, Nick Scott, and Bungo Media, and he has held himself out as president of Nationwide Ventures, LLC.  Defendant Congleton, along with Defendant Paul Daniel Pascual, has had primary responsibility for advertising Pure Green Coffee.  Congleton resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

13.     Defendant Paul Daniel Pascual ("Pascual") has a substantial ownership interest in and has played a leading management role in NPB Advertising, Inc.; Nationwide Ventures, LLC; Olympus Advertising, Inc.; JMD Advertising, Inc.; and Signature Group, LLC.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of NPB

Advertising, Inc.; Nationwide Ventures, LLC; Olympus Advertising, Inc.; Signature Group, LLC; JMD Advertising, Inc.; and Sermo Group, LLC, including the acts and practices set forth in this Complaint. In connection with these activities, Defendant Pascual has used the aliases Mike Jackson and Bungo Media and has held himself out as chief executive officer of Nationwide Ventures, LLC. Defendant Pascual, along with Defendant Congleton, has had primary responsibility for advertising and marketing Pure Green Coffee. Defendant Pascual resided in this district during much of the relevant time period, and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

14. Defendant Bryan Benjamin Walsh ("Walsh") has a substantial ownership interest in and has played a leading management role in NPB Advertising, Inc.; Nationwide Ventures, LLC; Olympus Advertising, Inc.; JMD Advertising, Inc.; and Signature Group, LLC; and has played a leading management role in Sermo Group, LLC. Defendant Walsh also is president of NPB Advertising, Inc., and Olympus Advertising, Inc., and vice president of JMD Advertising, Inc. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of NPB Advertising, Inc.; Nationwide Ventures, LLC; Olympus Advertising, Inc.; JMD Advertising, Inc.; Signature Group, LLC; and Sermo Group, LLC, including the acts and practices set forth in this Complaint. In connection with these activities, Defendant Walsh has used the aliases Mike Jackson and Bungo Media. Defendant Walsh has had primary responsibility for the daily operations related to Pure Green Coffee sales and has responded to complaints from the Better Business Bureau. Defendant Walsh

resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

15.     At all times material to the complaint, Defendants NPB Advertising, Inc.; Nationwide Ventures, LLC; Olympus Advertising, Inc.; JMD Advertising, Inc.; Signature Group, LLC; and Sermo Group, LLC, (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices alleged below.  Defendants have conducted the business practices described below through an interrelated network of closely held companies that have substantially overlapping ownership, have officers and managers in common, and share employees, office locations, and payment processing and other business functions.  Because Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendants Congleton, Pascual, and Walsh ("Individual Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.  Collectively, the three Individual Defendants and six Corporate Defendants are referenced herein as "Defendants."

## RELIEF DEFENDANTS

16.     Relief Defendant Dylan Craig Loher ("Loher") is an individual who resides in the Middle District of Florida.  Loher, the half-brother of Defendant Congleton, has received funds or other assets that can be traced directly to Defendants' acts or practices alleged below, and he has no legitimate claim to those funds or assets.  Those funds or assets include ownership of, or beneficial interest in, a real property located at 114 South 12th Street in

Tampa, including any improvements thereon, that Dylan Loher purchased in January 2013 with funds derived from the sale of Pure Green Coffee.

17.     Relief Defendant CPW Funding, LLC, is a Colorado limited liability company with a place of business in the Middle District of Florida, in which Defendants Congleton, Pascual, Walsh each holds a one-third interest.  CPW Funding, LLC, has received funds or assets that can be traced directly to Defendants' acts or practices alleged below in connection with the sale of Pure Green Coffee, and it has no claim to those funds or assets.  Those funds or assets include $257,500, or value received therefrom, which funds were transferred in July 2013, first from a bank account of Defendant Nationwide Ventures, LLC, to a bank account of Defendant Walsh, and then to a bank account of CPW Funding, LLC.

## COMMERCE

18.     At all times material to this Complaint for all Defendants except Sermo, and at all times since early 2013 for Defendant Sermo, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### *The Dr. Oz Show* Discusses Green Coffee Extract.

19.     On or about April 26, 2012, Dr. Mehmet Oz proclaimed green coffee extract "the magic weight loss cure for every body type" on his nationally syndicated television talk show, *The Dr. Oz Show*.  In the episode, Dr. Oz touted a "staggering, newly released study" in which subjects "lost an astounding amount of fat and weight – 17 pounds in 22 weeks – by doing absolutely nothing extra in their day."

-8-

20.     The episode included the following discussion of the purported benefits of green

coffee extract:

> [ON-SCREEN depiction omitted][Dr. Oz speaking:]  A staggering, newly released
> study reveals that the coffee bean, in its purest raw form, may hold the secret to
> weight loss that you've been waiting for.  The study presented at a meeting of the
> world's largest scientific society triggered unprecedented excitement for a weight-
> loss study.  It showed women and men who took green coffee extract lost an
> astounding amount of fat and weight, 17 pounds –
>
> [TEXT ON-SCREEN:]
>
> 17 lbs<br>22 weeks
>
> [Dr. Oz:] –in 22 weeks by doing absolutely nothing extra in their day.
>
> ***
>
> [Guest Dr. Lindsey Duncan speaking:]  . . . So, and the medical community, the
> weight-loss community is all buzzing about this, and here's why.  The recent study
> that you were talking about earlier, they – the participants took the capsules and they
> did nothing else, they didn't exercise, they didn't change their diet.  They actually
> consumed 2,400 calories a day.  They burned only 400 calories.  Now, that's weight
> gain, not weight loss.
>
> [Dr. Oz:]  Yeah.
>
> [Dr. Duncan:]  And they lost over 10 percent of their total body weight.
>
> [Dr. Oz:]  Ten percent?
>
> [Dr. Duncan:]  Ten percent.  They lost 16 percent of their total body fat, and they lost
> about 17 pounds per participant, and they had no side effects, zero side effects.
>
> [Dr. Oz:]  And how long did they have to take the pills for?
>
> [Dr. Duncan:]  They did it for 12 weeks only.
>
> [Dr. Oz:]  That's remarkable.
>
> ***
>
> [Dr. Oz:]  So, how much do folks have to take in order to get the benefit?

[TEXT ON-SCREEN:]
THE DR. OZ SHOW
MIRACLE TO BURN FAT FAST
GREEN COFFEE BEAN EXTRACT
TAKE 800MG TWICE PER DAY

[Dr. Duncan:]  Eight hundred milligrams twice a day, and you want to take it before meals, about 30 minutes before with a large glass of water.

(Tr. attached as Ex. 1; DVD of video attached as Ex. 2.)  Dr. Oz did not recommend any specific brand of green coffee extract.

<u>Defendants Begin Marketing Pure Green Coffee.</u>

21.    Within weeks of *The Dr. Oz Show* episode described above, Defendants began advertising and selling a dietary supplement that purports to contain green coffee bean extract and touting its effectiveness in causing weight loss.  Defendants named their supplement "Pure Green Coffee."

22.    Starting on or about May 8, 2012, Defendants Congleton, Pascual, and Walsh, using the aliases of Mike Jackson and Bungo Media, began registering Internet domain names to sell Pure Green Coffee.  Specifically, Defendants registered domain names including, but not limited to, buypuregreencoffee.com, buypuregreencoffee.net, buypuregreencoffee.org, buygreenweightloss.com, greencoffeeweightcontrol.com, coffeebeanstoloseweight.com, gogreenwithcoffeebean.com, questlabs.net, greencoffeesupport.com, buygreenweightloss.com, and igreencoffeebean.com (collectively, "Pure Green Coffee websites").

-10-

23.     Defendants have sold Pure Green Coffee for $48 a bottle, plus $4.95 shipping, for a one-month supply, with options to purchase three bottles for $98, or five bottles for $148. Defendants have sold more than 536,000 bottles of Pure Green Coffee since May 2012.

<u>Defendants Make Weight-Loss Claims Through Their Websites and Advertising.</u>

24.     To induce consumers to purchase Pure Green Coffee, starting in approximately May 2012, Defendants have disseminated, or caused to be disseminated, online banner advertisements and text advertisements that appear as paid search results on search engines, for Pure Green Coffee that link to Pure Green Coffee websites.  These advertisements include, but are not limited to, the following statements:

> A.     I lost 17 lbs and reduced body fat by 16% in 22 weeks – thanks to chlorogenic acid found in green coffee beans.
>
> B.     1 Tip to Lose Belly Fat
>         Cut Pounds of Stomach Fat Every Week By Using This 1 Weird Old Trick
>         www.buypuregreencoffee.com
>
> C.     Drop 3 Dress Sizes
>         Buy Pure Green Coffee
>         Discover the Shocking Truth About AMERICA's Hottest Diet

(Ex. 3.)

25.     To induce consumers to purchase Pure Green Coffee, starting in approximately May 2012, Defendants also have disseminated, or caused to be disseminated, advertisements for Pure Green Coffee on the Pure Green Coffee websites that include the video footage from The Dr. Oz Show, attached as a DVD as Exhibit 2 and excerpted above at Paragraph 20.  (Tr. attached as Ex. 1.)

26.     To induce consumers to purchase Pure Green Coffee, starting in approximately May 2012, Defendants also have disseminated, or caused to be disseminated, advertisements for

-11-

Pure Green Coffee on their websites that include, but are not limited to, the following statements:

    A.    In a study presented Tuesday at the American Chemical Society's spring national meeting in San Diego, 16 overweight young adults took, by turns, a low dose of green coffee bean extract, a high dose of the same green coffee supplement, and a placebo. Though the study was small, the results were striking: Subjects taking the full dose of the green coffee extract lost an average of 17.5 pounds in 22 weeks and reduced their overall body weight by 10.5%!

    B.    Users lost an average of 17 pounds in just 12 weeks.

    C.    Lose 20 pounds in just 4 weeks.

    D.    Buy 3 months and get 2 FREE bottles . . . Lose up to 30 lbs and 4-6 inches of belly fat!

    E.    Buy 2 months and get 1 FREE bottle . . . Lose up to 20 lbs and 2-4 inches of belly fat!

    F.    Buy one-month supply . . . Lose up to 10 lbs and 1-2 inches of belly fat!

(Ex. 4, 5.)

<u>Defendants Use Paid Testimonials for Pure Green Coffee.</u>

27.    To induce consumers to purchase Pure Green Coffee, Defendants have disseminated, or caused to be disseminated, advertisements for Pure Green Coffee, including, but not limited to, the attached Exhibits 6 and 7. These advertisements, presented on Pure Green Coffee websites, contain the following statements and depictions, among others, in video testimonials (Tr. attached as Ex. 6, depictions omitted; DVD of videos attached as Ex. 7) by purported consumers of Pure Green Coffee under the heading:

    REAL PEOPLE. REAL RESULTS. TESTIMONIALS FROM SATISFIED PURE GREEN COFFEE USERS

    [ON-SCREEN depictions omitted]

-12-

A.      [First video:]  Hi guys, I'm Amy.  I was looking for something that would help me lose a bit of weight and I came across Pure Green Coffee.  It's a weight loss supplement.  And I've had it for three weeks now and, honestly, I can say it has shown me amazing results.  I used to struggle to lose weight, but, honestly, this works miracles.  You guys should definitely check it out.

B.      [Second video:]  Hey guys.  So I've been using the Pure Green Coffee Bean Extract capsules for about a month now, and I have to say that the pills are working fantastically.  I am so glad that I watched Dr. Oz and I found out about them because I've been actually burning a lot of weight and I lost 10 pounds since I started using product.  And I am very happy with the results.

        And not only did I get such a high-quality product, but also -- I didn't have to use much money.  It was really greatly priced and it also got here really fast, too.  So, very fast shipping.  And I would highly recommend it to anyone that's just looking to burn a few pounds.  So yeah, go ahead and check it out.

C.      [Third video:]  Hi, my name's Jess, and I'm from the UK.  And I want to tell you how I've lost so much weight.  I have tried everything under the sun and nothing really seemed to work for me.  And then I was watching Dr. Oz and I actually saw something which people had said had worked.  So, I tried to give it a go.  It's [buypuregreencoffee.com], and it was absolutely fantastic.  I've lost 12 pounds so far, and I highly recommend it.  The weight fell off fast, and so far, it's just seemed to stay off.  So, try it out.

D.      [Fourth video:]  So, I used to be very self-conscious about my body and my weight.  I have been very frustrated and I've tried everything from juice diets to all sorts of diet pills, but just nothing seemed to work.  And I was just about ready to give up.  But I decided, you know, I should give Pure Green Coffee a try since it's 100 percent natural and I thought I had nothing to lose.  And let me tell you, this stuff is amazing.  I mean, wow.  I've just lost 15 pounds so far, and I've been eating more fruits and veggies and I've been going to the gym about four times a week.  So, I guess it's actually working because I've never felt better and I now fit into my old jeans.

(Ex. 6 (Tr.), 7 (DVD).)

28.     In truth and in fact, the persons who provided the video testimonials did not purchase

Pure Green Coffee and were not neutral or disinterested.  Defendants caused each

testimonialist to be paid $200 and receive a free thirty-day supply of the product in exchange

for providing video testimony about their purported experience using Pure Green Coffee.

Defendants did not disclose these facts in their advertisements.

<u>Defendants Use Fake-News Websites to Promote and Sell Pure Green Coffee.</u>

29.     To induce consumers to purchase Pure Green Coffee, Defendants have used websites

designed to look like legitimate consumer news sites or blogs that were in fact paid

advertisements.  These websites had domain names such as dailyconsumeralert.org,

healthylivingreviewed.com, econsumerlifestyle.com, and healthydietingreports.org.  The

sites, which consumers often reached by clicking on banner ads, featured what appeared to be

mastheads for news organizations, including Women's Health Journal, Healthy Living

Reviewed, and Consumer Lifestyles, and included the logos of actual news organizations,

such as CNN and MSNBC.  In addition, the fake-news sites included comments posted by

purported consumers.  The fake-news sites featured video footage from *The Dr. Oz Show*

discussing green coffee bean extract, and linked to the Pure Green Coffee websites.

30.     Starting in 2012, one of the fake-news sites used by Defendants to lure consumers to

Pure Green Coffee websites purported to provide the account of a journalist who had tried

the dietary supplement.  The website dailyconsumeralert.org, which was registered to

Defendant Congleton, displayed the masthead Women's Health Journal and featured the

purported account of "Health and Diet Writer Helen Hasman," who claimed to have "lost 27

pounds in nine weeks, with No Special Diet, and No Exercise."  Dailyconsumeralert.org

linked to a Pure Green Coffee website.  (Ex. 8.)

31.     Also in 2012, Defendant Pascual paid for the domain registration of a fake-news

page, econsumerlifestyle.com, that linked to a Pure Green Coffee site and contained the

following statements and depictions, among others:

> Let's cut to the chase:  The most recent study on green coffee bean published in the
> Diabetes, Metabolic Syndrome and Obesity journal followed a group of 16 adults
> who supplemented with green coffee bean for only 12 weeks.  Over the course of the
> study, the subjects lost an average of 17 pounds each – this was 10.5% of their overall
> body weight and 16% of their overall body fat!  There were no side effects reported.
> This is very exciting information and one reason why I think that green coffee bean
> could be an effective weapon against the obesity epidemic in our country.
>
> ***
>
> We're sure you've tried a lot of different weight loss products that all promise to do
> amazing things then don't deliver.  That shouldn't be the case, so we're going to tell
> you what we experienced when we tried Pure Green Coffee:
>
> ● Potent Fat Burner
> ● Effective Appetite Suppressant
> ● Works Quickly, Proven Results
> ● Affordable Prices
> ● Tremendous Weight loss results
> ● Increase in Focus
> ● Energy Throughout the day
> ● No Crash

(Ex. 9.)

32.     In addition to Defendants' own fake-news pages, Defendants employed entities

known as affiliate marketers, which used the same fake-news format to lure consumers to

Pure Green Coffee sites.  Defendants hired these affiliate marketers through third parties

known as affiliate networks, which match merchants with the affiliate marketers.  For each

consumer who views an affiliate marketer's advertisement and then takes a specific action,

such as clicking through to, or making a purchase on, one of Defendants' Pure Green Coffee

sites, Defendants pay a fee to the affiliate network, which in turn pays a fee to the affiliate

marketer. The affiliate marketers' websites employed a fake-news format substantially similar to the Defendants' own fake news pages and also linked to Pure Green Coffee websites.

33. The purported news webpages used to lure consumers to the Pure Green Coffee websites failed to disclose in a clear and conspicuous manner that they are not objectively evaluating the Defendants' products, programs, and services and, in fact, are being paid to promote the products, programs, and services.

34. In truth and in fact, the purported news webpages – both Defendants' own news pages and those of affiliate marketers – are fake. Reporters or commentators pictured on the sites are fictional, and they never conducted the tests or experienced the results described in the reports. The "responses" and "comments" following the reports are simply additional advertising content, not independent statements from ordinary consumers.

Defendants Use Vinson Study to Claim that
Pure Green Coffee Causes Substantial Weight Loss.

35. Defendants have represented that a clinical study proves that Pure Green Coffee, or a dietary supplement with substantially the same formulation, causes an average weight loss of seventeen pounds in twelve weeks, or an average weight loss of seventeen pounds in twenty-two weeks, reduces overall body weight by 10.5%, and reduces body fat by 16%, without diet or exercise. (*See* Ex. 4, 9.)

36. Applied Food Sciences, Inc., a manufacturer of Green Coffee Antioxidant, (GCA®) a dietary supplement ingredient containing chlorogenic acid derived from green coffee beans, funded the clinical study upon which Defendants rely for the claims in the preceding paragraph.

-16-

37. The study, Joe A. Vinson *et al.*, *Randomized, Double-Blind, Placebo-Controlled, Linear Dose, Crossover Study to Evaluate the Efficacy and Safety of a Green Coffee Bean Extract in Overweight Subjects*, 2012 Diabetes, Metabolic Syndrome and Obesity:  Targets and Therapy 5, 21-27 ("Vinson study") (Ex. 10) purported to describe a clinical trial conducted in Bangalore, India, involving sixteen overweight subjects (eight male, eight female) who were randomly assigned to three different treatment sequences, such that all subjects would at various points take the high-dose GCA (350 mg capsules three times a day), low-dose GCA (350 mg capsules twice a day), and a placebo (350 mg capsules of inert substance three times a day).  The subjects were to undergo:  (a) a treatment arm of six weeks, followed by a two-week washout period in which they took no capsules; (b) a second six-week treatment arm, followed by a second two-week washout period in which they took no capsules; and (c) a third six-week treatment arm.

38. The Vinson study claims that, at the end of twenty-two weeks, the sixteen subjects had lost, on average, 17.7 pounds (8.04 kilograms), 10.5% of their body weight, and 16% of their body fat.  Two fundamental flaws are apparent on the face of the Vinson study.  First, the majority of the weight loss − on average, 10.5 pounds (4.8 kilograms) – occurred outside of any treatment arms (*i.e.*, during the two, two-week washout periods).  *Compare* Ex. 10 at Table 1 (indicating weight and other changes over twenty-two weeks) *with* Table 2 (indicating weight and other changes during the three treatment arms).  Second, the steepest weight loss occurred during the first washout period in a group that had not yet ingested any GCA.  Ex. 10 at Figure 1 (indicating weight loss in group that started on placebo).  These flaws undermine the reliability of all of the study data.

-17-

39.     Independent of the problems described in the preceding paragraph, several design and methodological flaws apparent on the face of the study render the study data unreliable. Such flaws include, but are not limited to, its failure to document how the subjects and administrators were blinded given that subjects were instructed to take a different number of capsules (two a day) for the low-dose GCA, compared to the high-dose GCA and placebo (three a day); and its failure to disclose whether the subjects exercised during the study. These failures also undermine the validity and reliability of all of the study data.

## VIOLATIONS OF THE FTC ACT

40.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

41.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

42.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics.  For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, Pure Green Coffee is either a "food" or "drug" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. § 55(b) and (c).

## Count I

### False or Unsubstantiated Efficacy Claims

43.    Through the means described in Paragraphs 21 through 34, Defendants have

represented, directly or indirectly, expressly or by implication, that Pure Green Coffee causes

substantial weight loss and fat loss, or rapid and substantial weight loss and fat loss,

including:

      A.    Lose seventeen pounds in twenty-two weeks;

      B.    Lose seventeen pounds in twelve weeks;

      C.    Lose 16% of body fat in twenty-two weeks;

      D.    Lose 16% of body fat in twelve weeks;

      E.    Lose twenty pounds in four weeks;

      F.    Lose twenty-seven pounds in nine weeks without diet or exercise;

      G.    Lose ten pounds and one to two inches of belly fat in one month;

      H.    Lose twenty pounds and two to four inches of belly fat in two to three months; and

      I.    Lose thirty pounds and four-to-six inches of belly fat in three to five months.

44.    The representations set forth in Paragraph 43 are false or were not substantiated at the

time the representations were made.

45.    Therefore, the making of the representations as set forth in Paragraph 43 constitutes a

deceptive act or practice and the making of false advertisements, in or affecting commerce, in

violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

**Count II**

**False Proof Claims**

46.     Through the means described in Paragraphs 24 through 26, and 29 through 35, Defendants have represented, directly or indirectly, expressly or by implication, that a clinical study proves that Pure Green Coffee, or a dietary supplement with substantially the same formulation, causes substantial weight loss, or rapid and substantial weight loss, including, but not limited to, an average weight loss of seventeen pounds in twelve weeks, or an average weight loss of seventeen pounds in twenty-two weeks, and reduces overall body weight by 10.5% and overall body fat by 16%, without diet or exercise.

47.     In truth and in fact, a clinical study does not show that Pure Green Coffee causes substantial weight loss, or rapid and substantial weight loss, including, but not limited to, an average weight loss of seventeen pounds in twelve weeks, or an average weight loss of seventeen pounds in twenty-two weeks, and reduces overall body weight by 10.5% and overall body fat by 16%, without diet or exercise.

48.     Therefore, the making of the representation as set forth in Paragraph 46 constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

**Count III**

**Failure to Disclose Material Connection (Testimonials)**

49.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of Pure Green Coffee, Defendants, directly or indirectly, have represented, expressly or by implication, through the means described in Paragraph 27, that

-20-

consumers appearing in advertisements for Pure Green Coffee are satisfied users of Pure Green Coffee who purchased the product independently.

50.     In numerous instances in which Defendants have made the representations set forth in Paragraph 49, they have failed to disclose that certain of the consumers appearing in their advertisements were provided Pure Green Coffee for free and were paid to provide a video testimonial regarding their purported experience using the product.  These facts would have been material to consumers in deciding whether to purchase Pure Green Coffee.

51.     Defendants' failure to disclose the material information described in Paragraph 50, in light of the representations described in Paragraph 27, constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## Count IV

## Misrepresentations (Fake News Reports)

52.     Through the means described in Paragraphs 29 through 34, Defendants have represented, directly or indirectly, expressly or by implication, that:

   A.     Certain websites linking to Defendants' Pure Green Coffee websites are objective news reports;

   B.     Objective news reporters have performed independent tests demonstrating the effectiveness of Pure Green Coffee; and

   C.     The comments following the "news articles" express the views of independent consumers.

53.     In truth and in fact:

    A.     The websites linking to Defendants' Pure Green Coffee websites are advertisements made to appear as objective news reports;

    B.     Objective news reporters have not performed independent tests demonstrating the effectiveness of Pure Green Coffee; and

    C.     The comments following the "news articles" on the websites linking to Defendants' Pure Green Coffee websites do not express the views of independent consumers.

54.     Therefore, the making of the representations as set forth in Paragraph 52 of this Complaint constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Relief Defendants

55.     Relief Defendants Loher and CPW Funding have received, directly or indirectly, funds, other assets, or both, from Defendants that are traceable to funds obtained from Defendants' unlawful acts or practices described herein.

56.     Relief Defendants Loher and CPW Funding are not bona fide purchasers with legal and equitable title to Defendants' customers' funds and other assets, and Loher and CPW will be unjustly enriched if they are not required to disgorge the funds or the value of the benefit they received as a result of Defendants' unlawful acts or practices.

57.     By reason of the foregoing, Relief Defendants Loher and CPW Funding hold funds or other assets in constructive trust for the benefit of Defendants' customers.

## CONSUMER INJURY

58. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

59. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

B. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

-23-

C.      Enter an order requiring Relief Defendants Loher and CPW Funding to disgorge

all funds and assets, or the value of the benefit they received from the funds and assets, which are

traceable to Defendants' unlawful acts or practices; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

Dated:      January 12, 2015

ELIZABETH OLIVIA TUCCI, Trial Counsel
MARY L. JOHNSON
KATHERINE A. CAMPBELL
Federal Trade Commission
600 Pennsylvania Avenue, N.W., CC-10528
Washington, D.C. 20580
Tel.: 202-326-2402, -3115,-2924
Fax: 202-326-3259
Email: etucci@ftc.gov, mjohnson1@ftc.gov,
kcampbell@ftc.gov